UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

MICHAEL J. DEUTSCH,

                        Plaintiff,

            - against -

JPMORGAN CHASE & CO., LIVE NATION
ENTERTAINMENT, INC., and
TICKETMASTER ENTERTAINMENT, INC.,

                     Defendants.

----------------------------------------------------------X

18-CV-11655 (VSB)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2019

Appearances:

Peter Deutsch
Peter Deutsch Attorney
Hollywood, Florida
*Counsel for Plaintiff*

Alan Schoenfeld
Noah Adam Levine
Wilmer Cutler Pickering Hale & Dorr LLP
New York, New York
*Counsel for Defendant JPMorgan Chase & Co.*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Plaintiff Michael Deutsch ("Plaintiff") brings this action against Defendant JPMorgran

Chase & Co. ("Chase" or "Defendant") alleging claims related to several allegedly fraudulent

credit card transactions. Before me is Defendant's motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion to dismiss is

GRANTED IN PART and DENIED IN PART. Specifically, Defendant's motion is DENIED as

to Plaintiff's claims for violation of the Truth in Lending Act (Count II), breach of contract

(Count III), and false advertising (Count VIII).  Defendant's motion to dismiss is GRANTED as to all other claims.

## I. **Background**[1]

Plaintiff has been a Chase customer for many years.  (Compl. ¶¶ 7–9.)[2]  Toward the end of 2015, Plaintiff entered a Chase branch in Manhattan, where a Chase employee, Ryan Buckley, suggested that Plaintiff upgrade his current credit card to a Chase Sapphire Reserve credit card. (*Id.* ¶ 10.)  In making the proposal, Buckley explained that the Sapphire Reserve card "had much stronger fraud protection than the standard Sapphire card," that "it was the best fraud protection Chase had ever developed or offered," and that if Plaintiff had the Sapphire Reserve card, "Chase would use every available means to contact him about any suspicious activity on his card and . . . would decline to apply any suspicious charges . . . unless and until it had contacted him and he had acknowledged that he had authorized the transaction."  (*Id.* ¶¶ 11–12.)  Buckley showed Plaintiff a brochure, which included an explanation of the additional fraud protection. (*Id.*)  Plaintiff accepted the offer, authorized Buckley to upgrade his card, and Plaintiff agreed to pay the $450 fee.  (*Id.* ¶ 13.)  Based on Plaintiff's excellent credit history, Defendant extended him the maximum possible credit limit of $75,000.  (*Id.* ¶ 18.)  Sometime thereafter, Plaintiff visited Chase's public website, which stated, "We've got you covered. . . .  24/7 fraud monitoring.  We use specialized tools to monitor for fraud and we'll text, e-mail or call you if there's anything unusual on your account[.]"  (*Id.* ¶ 14.)

---

[1] The following factual summary is drawn from the allegations contained in Plaintiff's complaint.  (Doc. 1.)  I assume the allegations in the amended complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to the Complaint for Declaratory, Equitable, and Other Relief, filed December 13, 2018 ("Complaint").  (Doc. 1.)

Beginning in February 2018, Plaintiff entered into some sort of business relationship with Patrick Ayson, a ticket broker who operated a business named Patixsuites.[3] (*Id.* ¶¶ 22–26.) Plaintiff and Ayson entered into written agreements, pursuant to which Plaintiff would provide funds for the purchase of tickets from Ticketmaster Entertainment, Inc. ("Ticketmaster") at face value, which Ayson would resell at a profit, keeping a portion of the proceeds as a commission. (*Id.* ¶¶ 23–25.) For each transaction, Plaintiff deposited funds directly into an account maintained by Ayson or his business, or Plaintiff wired funds to those accounts. (*Id.* ¶ 26.)

On February 24, 2018, Ayson and Plaintiff discussed "an opportunity to purchase tickets to a Golden State Warriors basketball team game that evening against the Oklahoma City Thunder," but Ayson explained to Plaintiff "that the potential buyers for the tickets were at the arena." (*Id.* ¶ 27.) Because of these circumstances, "Ayson explained, he would be able to purchase the tickets only if [Plaintiff] provided him with his credit card number." (*Id.*) Plaintiff "provided Ayson with his Sapphire Reserve card number, its expiration date and 'C[V]V' number from the back of the card." (*Id.* ¶ 28.) Plaintiff "did not ask Ayson about the precise mechanism of how he would use his credit-card information and Mr. Ayson did not explain it either." (*Id.*) However, Plaintiff assumed—based upon his past experiences with ticket brokers—that Patixsuites would charge his credit card for the cost of the tickets. (*Id.*) A short while later, Ayson called Plaintiff to inform him that the charge had been rejected, and Plaintiff then called Chase to confirm that the charge had been authorized. (*Id.* ¶ 29.) The Chase representative explained that Ticketmaster, not Chase, had declined the transaction "because the card had not been physically present at the point of sale." (*Id.*)

---

[3] Patixsuites is also known at "Pat's Tickets." (Compl. ¶ 22.)

The following day, Plaintiff called Chase to confirm that the tickets had not been charged to his account. (*Id.* ¶ 31.) The Chase representative said that the only charge from the previous day had been one by Patixsuites for $999.99, which Patixsuites had credited back the same day. (*Id.*)

Plaintiff did not authorize Ayson to make any additional charges on the Sapphire Reserve card, but, over the following weeks, Ayson used the card to make at least forty additional purchases. (*Id.* ¶¶ 34, 40.) Using Plaintiff's name and credit card information, Ayson provided his own email address to Ticketmaster and requested that the tickets be emailed directly to him. (*Id.* ¶¶ 37–38.) Between the time when Plaintiff upgraded to a Sapphire Reserve card and February 2018, Plaintiff's monthly balance averaged between $6,000 and $7,000 per month, rising above $10,000 only once and never exceeding $15,000. (*Id.* ¶¶ 19–20.) From March 7, 2018 to March 23, 2018, Ayson made fraudulent charges totaling $118,205.88, raising Plaintiff's balance to over $124,000. (*Id.* ¶¶ 40–41, 43.) For example, in a six-day period between March 7, 2018 and March 13, 2018, Ayson made fourteen fraudulent charges of between $1,300 and $2,400, totaling $24,508. (*Id.* ¶ 45.) On March 20, 2018, Ayson made nine fraudulent charges totaling $30,822.68. (*Id.* ¶ 48.)

Chase did not notify Plaintiff of the fraudulent charges. (*Id.* ¶¶ 42, 45, 47.) Plaintiff learned of the fraudulent charges on March 27, 2018, after Chase declined one of Plaintiff's own, valid charges. (*Id.* ¶¶ 42, 74–75.) Plaintiff reported the fraudulent charges as soon as he learned of them, and his card was cancelled and reissued on the same day. (*Id.* ¶ 76.)

## II.    **Procedural History**

Plaintiff filed this action on December 13, 2018.  (Doc. 1.)  On February 1, 2019, Chase filed a motion to dismiss, (Doc. 17), supported by a memorandum of law, (Doc. 18), and a declaration, (Doc. 19).  On March 15, 2019, Plaintiff and Live Nation Entertainment, Inc. and Ticketmaster Entertainment, Inc., which were also named as defendants in Plaintiff's Complaint, filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), (Doc. 41), which was so ordered by Judge Ronnie Abrams on March 19, 2019, (Doc. 42).  On March 26, 2019, Plaintiff filed a memorandum in opposition to Chase's motion to dismiss. (Doc. 43.)  Judge Abrams rejected Plaintiff's memorandum because it exceeded the applicable page limit, (*see* Doc. 45), and Plaintiff filed an amended memorandum on April 1, 2019, (Doc. 46).  On April 4, 2019, this case was reassigned to my docket.  Chase filed its reply memorandum on April 19, 2019.

Although he did not obtain leave to do so, Plaintiff filed a sur-reply memorandum on April 29, 2019.  (*See* Doc. 48).[4]  Chase submitted a letter in response to the sur-reply on May 3, 2019.  (Doc. 49.)  On May 10, 2019, because Plaintiff failed to articulate the standard for when a sur-reply should be accepted, or to make any attempt to demonstrate that he met that standard, I denied Plaintiff's request for leave to submit a sur-reply.  (Doc. 50.)  Accordingly, I do not consider Plaintiff's sur-reply or Chase's May 3, 2019 response in deciding the motion before me.

On August 26, 2019, Plaintiff submitted a letter to "alert[] [me] to recently-discovered, additional information" for consideration "with respect to the pending motion to dismiss."  (Doc. 52.)  Chase filed a letter response on August 28, 2019, objecting to the consideration of the

---

[4] Plaintiff submitted the sur-reply in the form of the letter.  In the first paragraph of the letter, Plaintiff's counsel stated, "I write, respectfully, to ask your Honor for leave to submit this letter as a sur-reply to the reply memorandum filed by [Defendant]."  (*See* Doc. 49, at 1.)

evidence.  (Doc. 53.)  Because the letter offered additional information only as a proffer from Plaintiff's attorney, and not in or attached to a sworn declaration or affidavit, I need not reach the question of whether or not it would be appropriately considered on a motion to dismiss.[5]

### III.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal

---

[5] If I were to reach the question, I would almost certainly find that the evidence would not appropriately be considered.  *See Silver v. Entergy Nuclear Operations, Inc.*, No. 15 CV 1792 (VB), 2015 WL 7430869, at *1 (S.D.N.Y. Nov. 19, 2015) (declining to consider a document that was "not attached to the complaint or incorporated therein by reference" (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## IV. <u>Discussion</u>

### A. *Consideration of the Cardmember Agreement*

#### 1. Applicable Law

A district court is limited in the material it may consider in deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). "First, it may consider assertions made within 'the four corners of the complaint itself.'" *Russomanno v. Murphy*, No. 09 Civ. 8804(RJH), 2011 WL 609878, at *3 (S.D.N.Y. Feb. 16, 2011) (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)). A court may also consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in [the complaint] by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). For a document to be considered "incorporated by reference," the complaint must contain a "clear, definite and substantial reference" to that document. *Helprin v. Harcourt*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner, Inc.,* 440 Fed. App'x 7, 9 (2d Cir. 2011) (summary order). "Multiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013).

Where a document is not incorporated by reference, "the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document

'integral' to the complaint." *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network*, 62 F.3d at 72); *see also Russomanno*, 2011 WL 609878, at *3 ("The Second Circuit has emphasized that a plaintiff[']s *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court[']s consideration of the document on a dismissal motion; mere notice or possession is not enough." (emphasis in original)).

## 2. Application

In support of its motion to dismiss, Defendant submitted a declaration from a person employed by Defendant as an Operations Analyst, Estefania Luna-Valles. (*See* Luna-Valles Decl.)[6] Luna-Valles attached to her declaration Chase's standard Cardmember Agreement ("CMA"), (*see id.* Exs. 1–2), which she asserts was mailed to Plaintiff about four days after he opened his account. (*Id.* ¶ 4.) Plaintiff did not attach the CMA to the Complaint, the Complaint does not explicitly mention the CMA, and the Complaint does not refer to or describe any of the CMA's terms. (*See generally* Compl.) Plaintiff's claim for breach of contract does not allege that Defendant breached the CMA; rather, it alleges that Defendant breached an oral contract it entered with Plaintiff at a branch location. *See infra* Part. IV.D. In other words, the Complaint does not include a "clear, definite and substantial reference" to the CMA, so it is not incorporated by reference, *see Helprin*, 277 F. Supp. 2d at 330–31, and it does not rely "heavily upon [the CMA's] terms and effect," so it is not integral to the Complaint, *Chambers*, 282 F.3d at 153.

In a footnote, Defendant argues for the opposite conclusion. (*See* Def.'s Mem. 2 n.1.)[7] As an initial matter, Defendant arguably waived this argument by inappropriately raising it in a

---

[6] "Luna-Valles Decl." refers to the Declaration of Estefania Luna-Valles, filed February 1, 2018. (Doc. 19.)

[7] "Def.'s Mem." Refers to the Memorandum of Law in Support of Defendant Chase Bank USA, N.A.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed February 1, 2019. (Doc. 18.)

footnote. *See Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 574 n.1 (2d Cir. 2010) (summary order) ("Generally, we deem an argument raised only in a footnote as waived."); *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 7, 2007) ("Arguments which appear in footnotes are generally deemed to have been waived."). In other words, I could reject Defendant's argument on this basis alone. However, I will address the merits of Defendant's argument. Defendant relies primarily on *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 201 (S.D.N.Y. 2008), where the court considered a contract that was not attached to the complaint. In *Berman*, however, the court made a finding that the document was integral to other claims. *See id.* at 200. Here, Defendant made no attempt to demonstrate that the CMA was integral to Plaintiff's claims, offering only the conclusory assertion that Plaintiff's "claims turn on the content of Chase's representations and obligations to him, making this document 'integral' to the Complaint." (Def.'s Mem. 2 n.1.)

Defendant elaborates on this argument in its reply memorandum, identifying several statutes and regulations that contemplate the existence of a written agreement between a credit card issuer and user and that impose requirements related to those agreements. (*See* Def.'s Reply 5–6 (citing, for example, 12 C.F.R. § 1026.58 (requiring credit card providers to post credit card agreements to the Internet)).)[8] However, none of the laws identified by Defendant requires that any written credit card agreement be the *exclusive* agreement between an issuer and a user, so Plaintiff does not need to rely on the terms and effect of the CMA. Indeed, Plaintiff alleges that Defendant's failure to provide adequate fraud protection was a breach of contract, (*see* Pl.'s Opp. 8–10),[9] and Defendant concedes that the CMA does not require Defendant to provide fraud

---

[8] "Def.'s Reply" refers to Defendant Chase Bank USA, N.A.'s Reply in Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed April 19, 2019. (Doc. 47.)

[9] "Pl.'s Opp." refers to Plaintiff's amended Memorandum of Law in Opposition to Motion to Dismiss by Defendant

protection, (*see* Def.'s Mem. 8 ("The CMA includes no provision obligating Chase to notify a cardholder of a third party's 'fraudulent transactions' or 'to decline each of them.'")).

The law is clear that except for documents attached to the complaint or incorporated by reference, only a document "upon which the complaint *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on [a motion to dismiss]." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks omitted). The Complaint does not rely on the CMA for any cause of action, so I may not consider it on a motion to dismiss.

If a motion to dismiss introduces additional materials outside the pleadings, Federal Rule of Civil Procedure 12(d) specifies that a court may either exclude those materials or convert the motion to one for summary judgment. Defendant does not request that I convert its motion to one for summary judgment, and I see no reason to do so here without the benefit of additional discovery. Accordingly, I must exclude the CMA from consideration. *See* Fed. R. Civ. P. 12(d).

### B. *Declaratory Judgment and Equitable Relief (Count I) and Aiding and Abetting Fraud (Count XV)*

Defendant moves to dismiss Count I for declaratory judgment and equitable relief because the resolution of Plaintiff's other claims "would provide a sufficient remedy obviating the need for declaratory or equitable relief." (Def.'s Mem. 22 (citing *KM Enters., Inc. v. McDonald*, No. 11-cv-5098 (ADS)(ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013)).) Plaintiff does not address this argument at all in his opposition papers, and therefore concedes it. *See In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (arguments not addressed in opposition brief are conceded); *see also Impax Media, Inc. v. Ne. Advert. Corp.*, No. 17 Civ.

---

Chase Bank USA, N.A., filed April1, 2019. (Doc. 46.)

8272, 2018 WL 3962841, at *11 (S.D.N.Y. Aug. 17, 2018) (same). Plaintiff has made no

showing that there is no adequate remedy at law for any of his claims. *Brown v. Sandimo

Materials*, 250 F.3d 120, 127 (2d Cir. 2001) ("[B]efore equitable relief will be granted, plaintiffs

must show that they have no adequate remedy at law.").

Accordingly, Count I for declaratory judgment and equitable relief is dismissed.

Defendant moves to dismiss Count XV for aiding and abetting the alleged fraud

perpetrated by Ayson because Plaintiff has failed to allege that Defendant had actual—not

constructive—knowledge of Ayson's fraud. (*See* Def.'s Mem. 14–16.) Once again, Plaintiff

makes no attempt to address this argument in his opposition papers, and therefore concedes it.

*See UBS AG*, 2012 WL 4471265, at *11. In any event, Plaintiff only makes conclusory

allegations that "Chase . . . knew or should have known [Ayson's] misrepresentations or material

omissions of fact were false," (Compl. ¶¶ 162–63), and does not identify any specific facts to

support an inference that Defendant "provided substantial assistance to advance the fraud's

commission," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citation omitted).

Accordingly, Count XV for aiding and abetting fraud is dismissed.

## C. *Truth in Lending Act (Count II)*

### 1. Applicable Law

Count II asserts violation of the Truth in Lending Act ("TILA"), which limits a

cardholder's liability for the "unauthorized use" of a credit card to $50. *See* 15 U.S.C. §

1643(a)(1)(B). "'[U]nauthorized use' means the use of a credit card by a person, other than the

cardholder, who does not have actual, implied, or apparent authority for such use, and from

which the cardholder receives no benefit." 12 C.F.R. § 1026.12(b)(1)(i). Defendant argues that

Ayson had apparent authority to make the disputed transactions. (Def.'s Mem. 5–7.) "In

determining whether a use is unauthorized, Congress apparently contemplated, and courts have accepted, primary reliance on background principles of agency law in determining the liability of cardholders for charges incurred by third-party card bearers." *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) (internal quotation marks omitted).

> [Apparent authority] arises when a principal places an agent in a position where it appears that the agent has certain powers which he may or may not possess. If a third person holds the reasonable belief that the agent was acting within the scope of his authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized.

*King World Prods., Inc. v. Fin. News Network, Inc.*, 660 F. Supp. 1381, 1385 (S.D.N.Y.) (citation omitted), *aff'd sub nom. King World Prods., Inc. v. Fin. News Network*, 834 F.2d 267 (2d Cir. 1987); *see also Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238, 245–46 (2002) ("The existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal . . . ." (citation omitted)).[10]

## 2.  Application

Defendant asserts that Plaintiff's allegation that he "gave Ayson the confidential information necessary to make a purchase with his credit card and directed him to make a purchase on his behalf . . . suffices for [Plaintiff] to give Ayson authority to act beyond the purchase." (Def.'s Mem. 6.)  Defendant is correct that Plaintiff alleges that he "provided Ayson with his Sapphire Reserve card number, its expiration date and 'C[V]V' number from the back of the card." (*See* Compl. ¶ 28.)  This inartful drafting may create the impression if read in

---

[10] Defendant asserts that, because the "terms of the CMA specify that Delaware law applies," I should apply Delaware law in analyzing this question, (*see* Def.'s Mem. 6 n.7), and therefore Defendant relies primarily on Delaware and Third Circuit law in support of its TILA arguments, (*see id.* at 5–7).  As explained above, *see supra* Part IV.A, I cannot consider the CMA for purposes of this motion, and therefore New York and Second Circuit law control.  I note that Defendant concedes that, at least with respect to Plaintiff's tort claims, "there is no conflict between Delaware and New York law that could alter the disposition of those claims." (Def.'s Mem. 10 n.9.)

isolation that Plaintiff intended to give Ayson authority to use his credit card; however, in the same paragraph, Plaintiff clarifies that he "assumed that Ayson's company, Patixsuites, would charge [Plaintiff] for the purchase." (*Id.*) The Complaint also makes clear that Plaintiff provided his card information in connection with the "purchase [of] tickets to a Golden State Warriors basketball team game that evening against the Oklahoma City Thunder." (*Id.* ¶ 27.) In other words, a single specific purchase. Plaintiff alleges that he "called Chase and confirmed that he had authorized the charge." (*Id.* ¶ 29.) I can reasonably infer from this allegation that Plaintiff communicated to Defendant that the authority was limited to the specific charge discussed. These exchanges could reasonably describe any credit card transaction made over the phone, and cannot conclusively establish apparent authority as a matter of law. When reading paragraphs twenty-seven through thirty-five of the Complaint together, and drawing all reasonable inferences in Plaintiff's favor—as I must at this stage—I conclude that there are factual questions regarding whether Defendant was reasonable in believing that Ayson had apparent authority to make additional charges on Plaintiff's credit card.

Moreover, even though once apparent authority is established, a "third party ordinarily has no duty to inquire as to the agent's actual authority," *Graffman v. Delecea*, No. 96 Civ. 7270(SWK), 1997 WL 620833, at *4 (S.D.N.Y. Oct. 8, 1997), a duty to inquire arises "when the facts and circumstances are such as to put him on inquiry, the transaction is extraordinary, or the novelty of the transaction alerts the third party to the danger of fraud," *Herbert Constr. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 996 (2d Cir. 1991) (internal citations and quotation marks omitted). Plaintiff alleges that, throughout the history of his use of the Sapphire Reserve card, his monthly balance averaged between $6,000 and $7,000, and only rose above $10,000 on one occasion. (Compl. ¶¶ 19–20.) In contrast, Ayson's fraudulent charges exceeded $118,000 over

13

the course of just sixteen days. (*Id.* ¶¶ 40–43.) Indeed, the Complaint alleges that, notwithstanding Plaintiff's relatively modest usage history, he was not notified after Ayson made nine charges in a single day totaling $30,822.68 on March 20, 2018. (*Id.* ¶ 48.) Depending on what facts are developed during discovery, it is plausible that Plaintiff may ultimately establish that Ayson's transactions were "extraordinary" or "novel[]," thereby giving rise to the duty to inquire. *Herbert Constr.*, 931 F.2d at 996.

Finally, the "existence of apparent authority is normally a question of fact," *Minskoff*, 98 F.3d at 708, and it is therefore "inappropriate for resolution on summary judgment, much less on a motion to dismiss," *Volovnik v. Benzel–Busch Motor Car Corp.*, No. 09 Civ. 10595(DAB) (JLC), 2010 WL 3629819, at *8 (S.D.N.Y. July 29, 2010), *report and recommendation adopted*, 2010 WL 3629815 (S.D.N.Y. Sept. 16, 2010).

Accordingly, Defendant's motion to dismiss Count II for violations the TILA is denied.

### D. *Breach of Contract (Count III)*

#### 1. Applicable Law

Under New York law, a valid contract requires an "offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citation omitted). For a successful breach of contract claim, a plaintiff must show (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. *Berman*, 580 F. Supp. 2d at 202. "A sufficient pleading for breach of contract must, 'at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.'" *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991)). New York courts require plaintiffs to "plead the

provisions of the contract upon which the claim is based"—in other words, "a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated." *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, No. 91 Civ. 1816 (MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (internal quotation marks omitted); *see also Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 514 N.Y.S.2d 1002, 1003 (3d Dep't 1987) ("In an action to recover damages for breach of contract, the complaint must . . . set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract."). Further, oral contracts are "as enforceable as . . . written one[s]." *Charles Hyman, Inc. v. Olsen Indus., Inc.*, 642 N.Y.S.2d 306, 309 (1st Dep't 1996).

## 2. Application

Plaintiff alleges that, at a Chase branch in Manhattan, a Chase employee offered Plaintiff a new credit card—a Chase Sapphire Reserve card—and said that Plaintiff would receive additional benefits if he accepted the card. (*Id.* ¶¶ 10–11.) As part of the offer, the Chase employee assured Plaintiff that Chase "would use every available means to contact him about any suspicious activity on his card and that it would decline to apply any suspicious charges to his credit-card account unless and until it had contacted him and he had acknowledged that he had authorized that transaction." (*Id.* ¶ 12.) In other words, additional fraud protection, including prior notification of suspicious activity, was an explicit term of Defendant's offer to Plaintiff. Plaintiff alleges that he accepted the offer on the spot and "authorized Mr. Buckley to upgrade his card and agreed to pay the $450 annual fee." (*Id.* ¶ 13.) Plaintiff has, therefore, alleged the basic elements of an oral contract that was formed in the branch, pursuant to which Chase offered Plaintiff an upgraded credit card with additional fraud protection in exchange for $450, and Plaintiff accepted the offer and authorized Chase to upgrade his card. Plaintiff alleges

that Chase authorized several suspicious charges without first notifying him, thereby breaching the terms of their oral contract. (*See, e.g.*, Compl. ¶¶ 36–50.) Therefore, I find that Plaintiff has pled the minimal allegations necessary to support a claim for breach of contract.

Defendant's arguments that Plaintiff has failed to adequately allege breach of contract rely on the existence of the CMA. (*See* Def.'s Mem. 7–9.) As discussed above, Plaintiff does not allege that Defendant breached the CMA, and, in any event, I am not considering the existence and terms of the CMA for the purposes of this motion. *See supra* Part IV.A. Accordingly, Defendant's arguments fail, although Defendant is not precluded from making the same arguments at a later stage of the litigation and on a more complete record.[11]

### E.     *Promissory Estoppel (Count VI) and Detrimental Reliance (Count XIII)*

As an initial matter, "[d]etrimental reliance is an element of equitable and promissory estoppel; there is no independent cause of action for detrimental reliance." *Brinsights, LLC v. Charming Shoppes of Del., Inc.*, No. 06 Civ. 1745(CM), 2008 WL 216969, at *5 (S.D.N.Y. Jan. 16, 2008). Accordingly, Count XIII for detrimental reliance is dismissed.

To state a claim for promissory estoppel, a Plaintiff must plausibly allege four elements: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996). The doctrine of promissory estoppel "may be invoked in two situations": (1) where there is "a promise in the absence of bargained-for consideration"; and (2) "where the contract is rendered unenforceable by operation of the Statute of Frauds." *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 824 (2d Cir. 1994). The Statute of Frauds is inapplicable here, and

---

[11] My rulings in this Opinion & Order should not be read to address any arguments based on the existence and terms of the CMA, and I take no position concerning those arguments.

Plaintiff specifically alleges consideration in support of his breach of contract claim. *See supra* Part IV.D. Therefore, neither circumstance contemplated by *Merex* is present and Plaintiff cannot sustain a claim for promissory estoppel. Moreover, courts have often found that "[p]romissory estoppel sounds in contract theory," *Amadasu v. Ngati*, No. 05CV2585(JFB)(LB), 2006 WL 842456, at *8 (E.D.N.Y. Mar. 27, 2006), and dismissed claims for promissory estoppel when they are pled in addition to breach of contract claims, *see, e.g.*, *id.*; *Ciocca v. Neff*, No. 02Civ.5067(LTS)(HBP), 2005 WL 1473819, at *6 (S.D.N.Y. June 22, 2005); *Sharp v. Patterson*, No. 03 Civ. 8772(GEL), 2004 WL 2480426, at *11 (S.D.N.Y. Nov. 3, 2004).[12]

Accordingly, Count VI for promissory estoppel is dismissed.

### F. *False Advertising (Count VIII)*

Defendant argues that Plaintiff's cause of action for false advertising should be dismissed because the Lanham Act "does not provide a private right of action to individual consumers like him." (Def.'s Mem. 17.) The Complaint does not specifically identify the statute under which the false advertising claim arises, but it does allege that Defendant "caused its false statement to enter interstate commerce," suggesting that Plaintiff may have intended to bring his claim under a federal statute. (*See* Compl. ¶ 122.) Plaintiff's reliance on the Lanham Act and related case law in his opposition papers reinforces the assumption that he intended to bring a federal false advertising claim. (*See* Pl.'s Opp. 25–31.) Defendant is correct that "[a] consumer who is hoodwinked into purchasing a disappointing product . . . cannot invoke the protection of the Lanham Act." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).

---

[12] Plaintiff concedes that the promissory estoppel claim is the "flip side[] of the allegation that there was a contractual agreement," and that the existence of a valid contract, would render this theory "immaterial." (*See* Pl.'s Opp. 24.)

Accordingly, to the extent Plaintiff asserts any claims arising under the Lanham Act, those claims are dismissed.

However, the Complaint can also be construed to bring a claim under New York General Business Law § 350. The reasonableness of this inference is obvious—Defendant made the same inference in its moving papers. (*See* Def.'s Mem. 20–22.) To state a claim for false advertising under § 350, "a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). Defendant does not dispute that it engaged in consumer-oriented conduct; rather, Defendant argues that Plaintiff fails to allege that any of Defendant's advertisements were false, or that any statement made by Defendant caused Plaintiff's injuries. (Def.'s Mem. 21–22.) I address each argument in turn.

Defendant argues that because Plaintiff does not specifically attach a label of falsehood to any of Defendant's statements, he fails to meet the second prong of a false advertising claim. However, "[i]t is elementary that, on a motion to dismiss, a complaint must be read as a whole." *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985). Plaintiff alleges that Defendant's website "explicitly stated: 'We've got you covered . . . . 24/7 fraud monitoring. We use specialized tools to monitor for fraud and <u>we'll text, e-mail or call you if there's anything unusual on your account.</u>'" (Compl. ¶ 14.) Plaintiff also alleges that, notwithstanding repeated unusual activity on his account, Defendant did not text, email, or call him. (*See id.* ¶¶ 36–42; *id.* ¶ 45 ("Yet, despite its promises to [Plaintiff], [Defendant] did not notify him about any of [the allegedly fraudulent charges]."); *id.* ¶ 47 ("Despite the suspicious circumstances of [the] transactions, . . . [Defendant] never alerted [Plaintiff] . . . .").)

Accordingly, I find that Plaintiff has alleged facts that support a finding that Defendant made materially misleading statements.

Defendant also argues that Plaintiff fails to allege that the allegedly false statements—and not Ayson's fraud—caused Plaintiff's injuries. However, Plaintiff alleges that he "relied on the representations [Defendant] made about the superior fraud protection . . . in deciding how he used his card and also in deciding not to take steps to monitor his account for suspicious activity himself," and that as a result, Ayson made undetected fraudulent charges on his credit card. (*Id.* ¶¶ 15, 36–50.) Although Defendant may ultimately prove that Plaintiff was unreasonable in relying on those statements, or that the statements played no part in causing his injuries, Plaintiff at least plausibly alleges that Defendant's statements regarding fraud protection were misleading, and that his reliance on them caused his injuries.

Accordingly, Defendant's motion to dismiss Count VIII for false advertising is denied as to Plaintiff's claim under New York General Business Law § 350, but is granted as to Plaintiff's claim under the Lanham Act.

### G. Breach of Fiduciary Duty (Count IV), Negligence (Count VII), and Negligent Misrepresentation (Count XII)

Defendant argues that each of Plaintiff's tort claims, including his claims for breach of fiduciary duty, negligence, and negligent misrepresentation, should be dismissed because they are duplicative of his contract claim. (Def.'s Mem. 10–11.) To avoid duplication with a contract claim, a cause of action for breach of fiduciary duty or negligence must allege a duty that is independent of the duties owed under the contract itself. *See Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2007) (explaining that claims for "breach of fiduciary duty that merely duplicate contract claims must be dismissed" unless there is "a legal duty independent of the contract itself [that] has been violated" (internal quotation marks

omitted)); *MVP Health Plan, Inc. v. OptumInsight, Inc.*, 765 F. App'x 615, 617 (2d Cir. 2019) (summary order) (a negligence claim must be dismissed where there is no "independent legal duty [that] spring[s] from circumstances extraneous to, and not constituting elements of, the contract" (internal quotation marks omitted)).

In support of his breach of fiduciary duty claim, Plaintiff alleges that Defendant "had a duty to [Plaintiff] to protect him from any type of credit-card fraud." (Compl. ¶ 100.) In support of his negligence claim, Plaintiff alleges that Defendant "owed a duty to [Plaintiff] to protect him from fraudulent activity and to notify him of, or to decline, any suspicious transactions on his card." (*Id.* ¶ 115.) These duties are identical to the contractual duty Plaintiff alleges, pursuant to which Defendant "was obligated to notify [Plaintiff] of Ayson's fraudulent transactions and/or to decline each of them." (*Id.* ¶ 94.) Accordingly, because Plaintiff has not alleged a duty independent of the alleged contract, Plaintiff's breach of fiduciary duty and negligence claims are duplicative of his contract claim.

Plaintiff concedes this point, (*see* Pl.'s Opp. 31 ("To be sustained, a tort claim must rest on some source of duty or obligation outside of the contract itself.")), and instead argues that his claims should be permitted to proceed in the alternative because the validity of the contract is in dispute, (*id.* at 32–33). Plaintiff's argument relies on a misreading of *Board of Managers of Trump Tower at City Center Condominium by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 441 (S.D.N.Y. 2018). This case is unlike *Palazzolo*, where Judge Kenneth M. Karas permitted a tort claim to proceed where the plaintiff disputed the existence of a contract. *See id.* To the contrary, here, Plaintiff does not dispute the existence of a contract—he asserts that there in fact is a valid and enforceable contract. (*See* Pl.'s Opp. 8–18; Compl. ¶¶ 93–98.) Moreover, in *Palazzolo*, Judge Karas explicitly noted that a tort claim "may not be plead in the alternative alongside a

20

claim that the defendant breached an enforceable contract." 346 F. Supp. 3d at 465. Therefore, I find that Plaintiff's claims for breach of fiduciary duty and negligence are duplicative of his contract claim.

Similarly, even if Plaintiff could establish that the Complaint alleges all of the elements of a negligent misrepresentation claim,[13] it would still be dismissed, because "[a]ctions for . . . negligent misrepresentation will not lie when the factual underpinning for the claim is duplicative of a breach of contract claim." *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 Civ. 0432(LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008); *see also Winthrop-Univ. Hosp. Ass'n v. Sterling Servs. Grp., L.C.*, No. 08-CV-1404(JS)(ETB), 2009 WL 10709106, at *8 (E.D.N.Y. Mar. 31, 2009) (dismissing a negligent misrepresentation claim as duplicative even though it found that the parties "may have had a special relationship which prohibited Defendant from providing knowingly false information").

Accordingly, Count IV for breach of fiduciary duty, Count VII for negligence, and Count XII for negligent misrepresentation are dismissed.

### H. Fraud Claims (Fraud (Count XIV), Fraudulent Inducement (Count IX), Fraudulent Misrepresentation (Count X), and Fraudulent Concealment (Count XI))

#### 1. Applicable Law

In New York, "the elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012) (summary order) (quoting *Eurycleia Partners, LP v.*

---

[13] Defendant argues that Plaintiff has "failed to allege a privity-like relationship between the parties required to sustain [a negligent misrepresentation] claim." (Def.'s Mem. 12 n.10.) Plaintiff's opposition papers do not mention his claim for negligent misrepresentation.

*Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)). To plead a fraud claim, a plaintiff must satisfy Rule 9(b)'s pleading requirements, which require that a plaintiff "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)). A plaintiff must also "plead the factual basis which gives rise to a strong inference of fraudulent intent." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). This "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

## 2. Application

Defendant argues that Plaintiff's fraud and associated claims—Counts IX, X, XI, and XIV—should be dismissed because Plaintiff fails to allege that the statements on which they are based were false when they were made. (*See* Def.'s Mem. 12–14.) Plaintiff makes almost no attempt to address this argument, including by identifying the allegations in the Complaint he claims support his fraud claims; instead, he boldly asserts that "[n]ot much explanation about the basis for these claims is needed." (Pl.'s Opp. 24.) However, it is just such particularity that the law requires. *See* Fed. R. Civ. P. 9(b). Each of these counts could be dismissed based on Plaintiff's failure to address the argument that the alleged statements at issue were false when

they were made. *See UBS AG*, 2012 WL 4471265, at *11. In any event, Plaintiff's fraud claim and associated claims fail on the merits.

Plaintiff argues that the allegations in the Complaint meet the heightened pleading standard for fraud because, during his interaction with Buckley in the Chase branch, when he was promised heightened fraud protection, Buckley "knew or should have known" that the fraud protection didn't exist. (Pl.'s Opp. 25.) He further argues that *if* Buckley "knew the [CMA] placed no obligations on Chase to notify or indemnify [Plaintiff] if a fraud occurred, that would support the fraud allegations." (*Id.*) As an initial matter, Plaintiff agrees that I should not consider the CMA or its contents for the purposes of this motion. (Pl.'s Opp. 10–13.) Indeed, if Plaintiff had advanced the arguments regarding Buckley's knowledge of the terms of the CMA in the Complaint, I likely would have found that he had made a "clear, definite and substantial reference" to the CMA, thereby justifying its consideration on Defendant's motion. *Helprin*, 277 F. Supp. 2d at 330–31. Even if I were to consider the CMA, the Complaint does not allege that Buckley knew that the CMA did not include the level of fraud protection offered in the Fraud Provision of his alleged oral contract, and the speculation in Plaintiff's briefing is insufficient to meet the requirements of Rule 9(b). *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (noting that Rule 9(b) does not give "license to base claims of fraud on speculation and conclusory allegations" (citation omitted)); *see also Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 261 (S.D.N.Y. 2000) ("It is well established that plaintiffs cannot plead scienter based on speculation and conclusory allegations.")

Indeed, the Complaint fails to "articulate specific facts from which an inference of fraudulent intent . . . can be drawn." *Lesavoy v. Gattullo-Wilson*, 170 F. App'x 721, 723 (2d Cir. 2006) (summary order). To the contrary, Plaintiff alleges that, after he had upgraded but prior to

the alleged fraudulent transactions by Ayson, the "promises of a heightened degree of [fraud] protection were borne out when [Plaintiff] went to use his card," and "his attempted payments were declined by Chase." (Compl. ¶ 16.) In other words, Plaintiff incredibly argues that although Defendant provided the promised fraud protection, the promise to provide it was false when it was made. The allegations that Chase did in fact provide heightened fraud protection preclude an inference that, "at the time [Buckley] made the asserted representations and promises" of heightened fraud protection, Chase "never intended to honor" that promise. *New World Trading Co. v. Avshalomov*, No. 11 Civ. 6219(SAS), 2012 WL 4378055, at *2 (S.D.N.Y. Sept. 24, 2012) (internal quotation marks omitted); *see also Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d 143, 145 (2d Dep't 2005) (a cause of action for fraud is insufficient "absent specific and detailed allegations establishing a material misrepresentation of fact [and] knowledge of falsity").

Finally, Plaintiff's fraud claims based on Defendant's failure to provide fraud protection fail because he alleges that he and Defendant entered an oral contract for heightened fraud protection. Plaintiff's "mere allegation that '[Defendant] did not intend to perform'" on the oral contract when it was entered "fails to state a claim for fraud" and must be "dismissed as duplicative under New York law." *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001) (quoting *Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777, 779 (1st Dep't 1988)). Other than the contractual promise to provide fraud protection, the Complaint "does not allege any specific collateral promises or omissions of material fact that were relied upon in entering the contract," and so "'it alleges nothing more than a breach of the contract,' and the fraud claim must be dismissed." *Gladsky v. Frank Scobbo Contractors, Inc.*, No. 16-CV-2365 (DRH)(AYS), 2017 WL 3731323, at *6 (E.D.N.Y. Aug. 29, 2017) (quoting *N.Y. Univ.*

*v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)). Indeed, Plaintiff admits that the "fraud claims in the complaint are all the flip sides of the allegation that there was a contractual agreement between [Defendant] and [Plaintiff] that covered fraud protection." (Pl.'s Opp. 24.)

Accordingly, Count XIV for fraud is dismissed.

For the reasons stated above, each of Plaintiff's other fraud-related claims—fraudulent inducement, fraudulent misrepresentation, and fraudulent concealment—also fail. *See Wild Bunch, SA v. Vendian Entm't, LLC*, No. 17 Civ. 1383, 2018 WL 1365690, at *3 n.1 (S.D.N.Y. Feb. 26, 2018) ("[T]o establish a fraudulent inducement claim, a plaintiff must prove," *inter alia*, "a misrepresentation or omission of material fact . . . which the defendant knew to be false . . . ." (internal quotation marks omitted)); *Harries v. Stark*, No. 15-cv-5917 (PKC), 2018 WL 2357258, at *6 (S.D.N.Y. Mar. 30, 2018) (where a claim for fraudulent inducement is not "predicated upon an . . . alleged false promise [that] is collateral to the contract the parties executed[,] . . . the fraud claim is subject to dismissal as duplicative of the claim for breach of contract" (citation omitted)); *In re Amla Litig.*, 282 F. Supp. 3d 751, 759 (S.D.N.Y. 2017) ("The basic elements of fraudulent misrepresentation are," *inter alia*, "that the defendant made a material misrepresentation, with . . . scienter (i.e., the intent to defraud) . . . ."); *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (summary order) ("[A] cause of action for negligent or fraudulent misrepresentation cannot arise out of the same facts that serve as the basis for a plaintiff's causes of action for breach of contract." (internal quotation marks omitted)); *Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 362 (S.D.N.Y. 2009) ("To state a claim for fraudulent concealment under New York law, a plaintiff must allege the standard elements of fraud . . . ."); *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 411 (S.D.N.Y. 2016) (dismissing a claim for fraudulent concealment

as duplicative of a contract claim because "the duty to disclose must exist separately from the duty to perform under the contract" (citation omitted)).

Accordingly, Count IX for fraudulent inducement, Claim X for fraudulent misrepresentation, and Count XI for fraudulent concealment are dismissed.

## I. *Leave to Amend*

Plaintiff requests that he be given the opportunity to cure any deficiencies "by restructuring the complaint or by pleading other facts." (Pl.'s Opp. 34–35.) Plaintiff makes this request on the penultimate and "final page of [his] brief in opposition to [Defendant's] motion to dismiss, in boilerplate language and without any explanation as to why leave to amend [is] warranted." *Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (summary order) (finding that the district court did not abuse its discretion in denying such a request). If Plaintiff seeks leave to amend his pleading, he shall do so on an appropriate motion, attaching the proposed amended pleading and all other motions papers required by Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), including a legal memorandum, demonstrating why each proposed amendment satisfies the requirements of Federal Rule of Civil Procedure 15.

In light of my finding that many of Plaintiff's claims are precluded as duplicative of his breach of contract claim, Plaintiff is advised that he faces a significant hurdle to demonstrate that amendment would not be futile. *See Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 277 (S.D.N.Y. 2019) (denying leave to amend a pleading because "it would be futile . . . to replead the third counterclaim (for fraud and fraudulent inducement), because that claim would continue to be duplicative of [the] breach of contract counterclaim," which the court did not dismiss).

### V.    Conclusion

For the reasons stated above, Defendant's motion to dismiss the Complaint is GRANTED IN PART and DENIED IN PART.  Specifically, Defendant's motion is granted as to Counts I, IV, VI, VII, and IX–XV, and those claims are dismissed.  Defendant's motion is DENIED as to Counts II, III, and VIII.

If Plaintiff wishes to amend the Complaint, he shall seek leave to do so, on a motion that complies with Local Rule 7.1, no later than three weeks after the entry of this Opinion & Order. Any motion for leave to amend shall attach a copy of the proposed amended complaint.  If Plaintiff files a motion for leave to amend, Defendant shall respond to the motion no later than two weeks after the motion is filed.  Plaintiff shall submit any reply in support of the motion no later than one week after Defendant's response is filed.  If Plaintiff does not seek leave to amend, Defendant shall file an answer to the Complaint within six weeks of the entry of this Opinion & Order.  The Clerk of Court is respectfully directed to terminate the pending motion at Document 17.

SO ORDERED.

Dated: September 30, 2019
        New York, New York

Vernon S. Broderick
United States District Judge